UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SON TAN NGUYEN,<br><br>                                Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, TODD BLANCHE, Acting Attorney General, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Field Office, CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,<br><br>                                Respondents. | Case No.:  26-CV-2815-JAO (JLB)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Son Tan Nguyen's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1).  Also before the Court are Respondents Markwayne Mullin's (Secretary of the Department of Homeland Security), Todd Blanche's (Acting Attorney General), Todd M. Lyon's (Acting Director, Immigration and Customs Enforcement ("ICE")), Jesus Rocha's (Acting Field Office Director, San Diego Field Office), and Christopher LaRose's (Warden at Otay Mesa Detention Center) Response in Opposition to Petitioner's Habeas Petition ("Ret.," ECF

1

No. 4) and Petitioner's Traverse ("Traverse," ECF No. 5).  For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner was born in Vietnam and received lawful permanent residence in the United States around 1985.  *See* ECF No. 1-2 at 3.  In 1990, Petitioner was convicted of a serious crime and sentenced to life in prison, for which he served 21 years and was granted parole in 2011.  *See id.*  As a result of this conviction, on January 22, 2013, an Immigration Judge ordered him removed to Vietnam, but ICE could not effectuate the removal.  *See id.*  As a result, Petitioner was then released on an order of supervision.  *See id.*  Several years later, Petitioner requested and received a new copy of his green card and was also informed that he no longer needed to check in with immigration authorities.  *See id.*  He has had no criminal convictions since his release.  *See id.*

On April 23, 2026, Petitioner was driving to work when masked officers apprehended him and dragged him out of his vehicle.  *See id.* at 4.  Petitioner contends he did not receive notice of why he was re-detained, nor did he receive an informal interview at which he could contest his arrest.  *See id.*  Respondents claim that both were provided.  *See* Ret. at 6–7.

Petitioner brings two claims:  first, that ICE disobeyed its own regulations, resulting in a violation of Petitioner's regulatory and due process rights; and second, that Petitioner's continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), 8 U.S.C. § 1231, and the Due Process Clause of the Fifth Amendment.  ECF No. 1 at 13–27.  The Court concludes that Petitioner prevails on his second claim and so will address that claim only.

## DISCUSSION

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or

26-CV-2815-JAO (JLB)

removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

When an alien is ordered removed, they must be detained for ninety days pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(2). This ninety-day period is referred to as the "removal period." *Id.* § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If a petitioner satisfies their initial burden, the burden then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release. *Id.* at 700.

Respondents assert two arguments: first, that Petitioner remains in the removal period, so his detention is presumptively reasonable; and second, there is a significant likelihood of his removal in the reasonably foreseeable future. *See*, *generally*, ECF No. 4. Respondents' positions fail to persuade.

26-CV-2815-JAO (JLB)

Turning to the first argument, Respondents contend that Petitioner's case is premature because he "brings this challenge less than two months" into the six-month *Zadvydas* grace period.  ECF No. 4 at 3.  Petitioner responds that the six-month grace period expired six months after he was ordered removed in 2013.  *See* ECF No. 1 at 9.  The primary question, then, is when Nguyen's period of removal commenced.  Section 1231(a)(1)(B) states that:

> The removal period begins on the latest of the following:
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021) ("[T]he removal period begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final.'").

The Court begins with a plain reading of 8 U.S.C. § 1231(a)(1)(B).  *See Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017); *Sandifer v. United States Steel Corp.*, 571 U.S. 220, 227 (2014) (directing courts to interpret statutory text according to its "ordinary, contemporary, common meaning"); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); ("In ascertaining the plain meaning of the statue, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole").  The statute is unequivocal that the removal period begins on the latest of (1) the day that Petitioner's order of removal became administratively final, (2) the date of the court's final order if the order was judicially reviewed and the court ordered a stay, or (3) the date of release from (non-immigration) detention or confinement.  *See* 8 U.S.C. § 1231(a)(1)(B).  There is no language in 8 U.S.C. § 1231 to support the contention that the presumption of reasonable detention resets at the time a noncitizen is re-detained after

being released on an order of supervision. *See Baythavong v. Noem*, 26-cv-1138-DMS-MSB, at \*2–3 (S.D. Cal. Apr. 6, 2026) (collecting cases); *Nguyen v. Noem*, 2026 WL 237282, at \*7 (S.D. Tex. Jan. 28, 2026) ("[T]here is nothing in the relevant statutory language to suggest that the removal period restarts or resets automatically with another arrest or subsequent redetention, and neither *Zadvydas* nor other Fifth Circuit cases direct the Court to treat the six-month presumption of reasonableness in this manner"); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025) (holding that a series of releases and re-detentions by the government in essence results in an unconstitutional indefinite period of detention).

*Baythavong v. Noem* is directly on point here. 26-cv-1138-DMS-MSB, at \*2–3. In *Baythavong*, petitioner had been ordered removed following a criminal conviction, granted supervised release, and redetained years later. *Id.* The court held that the seven-year-period in which petitioner was on supervised release was relevant to the calculation of the *Zadvydas* grace period, and as such, the presumptively reasonable period for petitioner's detention expired six months after his removal order was issued. *Id.*

Here, Petitioner was ordered removed on January 22, 2013, and it is not disputed that the order became administratively final on that day. *See* ECF No. 4 at 2. No other subsections of 8 U.S.C. § 1231(a)(1)(B) apply to Petitioner that would have reset the grace period. Thus, it was "presumptively constitutional" for Petitioner to have been detained for six months starting on January 22, 2013, a date that has now long passed. *See Zadvydas*, 533 U.S. at 701. As such, Petitioner's detention is no longer presumptively reasonable.

Additionally, Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future: Petitioner argues that "ICE has now had 13 years to deport him," and despite his cooperation, they have not managed to do so. Pet. at 11. Petitioner further contends that several courts have found that barriers continue to obstruct removal for people like Petitioner, who immigrated to the United States pre-1995. *See Nguyen*, 796 F. Supp. 3d at 723; *Hoac v.*

5

*Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151 (D. Mass. 2025).  These barriers include, though are not limited to, a long history of the United States struggling to remove pre-1995 immigrants, the need for Vietnam to conduct case-by-case assessments of such individuals, and evidence suggesting that the United States is continuing to struggle with removal despite the issuance of memoranda of understanding between the two countries.  *See Nguyen*, 796 F. Supp. 3d at 723; *Nguyen*, 788 F. Supp. 3d at 151.  The burden now shifts to Respondents to rebut Petitioner's showing.  *Zadvydas*, 533 at 701.

Respondents first argue that prior barriers to removal to Vietnam have been lifted.  In support of this, Respondents point to some deportation statistics and a 2020 Memorandum of Understanding ("MOU") between Vietnam and the United States.  More specifically, Respondents state that ICE removed at least 587 Vietnamese citizens in 2025, 324 of whom were pre-1995 immigrants like Petitioner.[1]  Ret. at 2.  Respondents also argue that as of 2020, Vietnam issues travel documents for pre-1995 immigrants in a "non-negligible portion of cases."  *Id.* at 4–5.  Even assuming the veracity of these statements, Respondents do not provide statistics on the number of total requests submitted to Vietnam, the number of pending requests, the average amount of time that requests remain pending, or what the repatriation criteria are, such that the Court can conduct an analysis of even the general likelihood of removal.  *See Phan v. Warden of Otay Mesa Det. Facility*, 813 F. Supp. 3d 1179, 1186 (S.D. Cal. 2025); *Duong v. Bondi*, 817 F. Supp. 3d 1095, 1101 (W.D. Wash. 2025).  And even if Respondents had provided this data, information on the general likelihood of removal is insufficient for the Court to analyze the likelihood that Petitioner, specifically, will be removed.  *See Phan*, 813 F. Supp. 3d at 1186 ("[E]vidence that Respondents have successfully removed other

---

[1] Respondents reference a declaration from Jason Cole, which is not in the record.  Ret. at 2.

26-CV-2815-JAO (JLB)

Vietnamese citizens is insufficient to demonstrate a significant likelihood that *Petitioner* will receive a travel document." (emphasis in original)).

Turning to the MOU itself, that document only provides that Vietnam has "discretion" whether to issue a travel document that it exercises on a "case-by-case basis," *Hoac*, 2025 WL 1993771, at \*5, and therefore does not itself show that Plaintiff is significantly likely to be removed in the reasonably foreseeable future. *See Nguyen*, 788 F. Supp. 3d at 151; *Nguyen*, 796 F. Supp. 3d at 726.

Respondents next argue that ICE submitted a "travel document request" on May 6, 2026.[2] Ret. at 4–5. This, too, does not support their determination that Petitioner is significantly likely to be removed in the foreseeable future. The mere submission of a travel document request does not itself make removal reasonably likely. *See, e.g.*, *Andreasyan v. Gonzales*, 446 F. Supp. 2d 1186, 1189 (W.D. Wash. 2006); *Islam v. Kane*, 2011 WL 4374226, at \*3 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4374205 (D. Ariz. Sept. 20, 2011); *Mohamed v. Ashcroft*, 2002 WL 32620339, at \*1 (W.D. Wash. Apr. 15, 2002) (granting petition despite pending travel document request). Here, Respondents provide no evidence showing their actual submission of a travel document request, let alone any additional details making removal reasonably likely. The Court does not know, for instance, if the travel request was submitted within the internal agency framework or if the request was submitted to the Vietnamese government, if Vietnam has acknowledged receipt of the request or responded in any form, or how long the wait time for a response might be (in general or in this scenario). *Nguyen*, 788 F. Supp. 3d at 151; *Nguyen*, 796 F. Supp. 3d at 726. And none of this provides the Court with the requisite tools to analyze whether Plaintiff, specifically, will receive a travel document. Respondents thus fail to rebut Petitioner's showing that there is no significant likelihood of removal.

Accordingly, the Court **GRANTS IN PART** the Amended Petition.

---

[2] Notably, this request was only filed *after* the Petition was filed in this case.

26-CV-2815-JAO (JLB)

**CONCLUSION**

Based on the foregoing, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody, subject to supervision under regulations prescribed by the Attorney General, including the requirements of 8 U.S.C. § 1231(a)(3).  Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal and follow all applicable statutory and regulatory procedures.  The Parties are **ORDERED** to file a Joint Status Report by June 2, 2026, confirming that Petitioner has been released.  As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

 **IT IS SO ORDERED.**

Dated:  May 26, 2026

Jill A. Otake
United States District Judge

26-CV-2815-JAO (JLB)